JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABEEL NAIEM SLAIEH and JOANNE FRALEIGH,<br><br>Plaintiffs,<br><br>v.<br><br>LARRY D. SIMONS,<br><br>Defendant. | Case No.: CV 17-1404-AB (FFMx)<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL OF APPELLANT'S COUNTERCLAIMS [9]** |

Before the Court is Appellants Nabeel Naiem Slaieh and Joanne Fraleigh's ("Appellants") appeal from the bankruptcy court's June 28, 2017 order granting with prejudice Defendant Larry D. Simons's Motion to Dismiss. (Dkt. No. 9; *see also* Defendant's Excerpts of Record ("DER") Ex. 177.) Having reviewed the parties' briefing and the record before the bankruptcy court, the June 28, 2017 order is **AFFIRMED**.

**I. BACKGROUND**

Appellant, the debtor in the underlying bankruptcy proceeding, filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 18, 2013. (DER Ex. 22.) That same day, the bankruptcy court appointed Larry D.

1.

Simons as Chapter 7 trustee ("Trustee") of Appellant's Estate. Among the assets in Appellant's bankruptcy Estate was his principal residence located at 40834 Baccarat Road, Temecula, California (the "Property"). (DER Ex. 22 at 35.)

Pursuant to his statutory duties to liquidate assets of the Estate, the Trustee marketed the Property for sale. *See* 11 U.S.C. § 704(a)(1). A buyer was found, and on April 6, 2016, the Trustee filed a Sale Motion with the bankruptcy court, seeking authority to sell the property for $635,000. (DER Ex. 97 at 3,512–3,898.) The bankruptcy court entered an order granting the Sale Motion on May 26, 2016. (DER Ex. 129 at 4,689–93.) Appellant appealed the Sale Order to the United States District Court and filed a motion to stay the case pending appeal in both the district court and the bankruptcy court. Both motions to stay were denied. (DER Exs. 137, 146.) The appeal of the Sale Order was later dismissed for failure to prosecute.

On July 13, 2016, the United States Marshals Service posted a notice to vacate at the Property, instructing all occupants to vacate by July 20, 2016, at 12 p.m. (DER Ex. 148 at 7,058.) On July 19, 2016, Ms. Fraleigh, Appellant's wife, filed a complaint in the Superior Court of California, County of Riverside, for quiet title, declaratory and injunctive relief, and violation of California Business and Professions Code section 17200 et seq. (DER Ex. 148 at 7,022–7,124.) She also sought a temporary stay of the eviction proceedings. (*Id.*) Ms. Fraleigh claimed that the sale could not proceed because Appellant transferred the Property to her via interspousal transfer deed, recorded on or about May 11, 2016. (*Id.* at 7,055–56.) In opposition, Trustee argued that this purported transfer was without the bankruptcy court's approval, and constituted an unauthorized post-petition transfer under 11 U.S.C. § 549. However, over the Trustee's objection, the state court entered a temporary stay of eviction. (*Id.* at 7,122.) The Trustee then removed the action to the bankruptcy court and filed an emergency motion to dissolve the temporary stay, which was granted on July 21, 2016. (DER Ex. 147 at 7,012–21; Ex. 150 at 7,254–55.)

Appellant and his family were subsequently evicted from the Property. Upon eviction, the Trustee discovered that various doors and windows had been removed from the Property; Appellant and Ms. Fraleigh were asked to return these items since they were part of the bankruptcy Estate and part of the realty being sold pursuant to the Sale Order. Appellant claims he and Ms. Fraleigh were not involved in the removal of these fixtures.

On August 23, 2016, the bankruptcy court issued an Order to Show Cause as to why Ms. Fraleigh and her attorney, Mr. Saba—who is also Appellant's attorney in the bankruptcy proceeding—should not be held in contempt for knowingly and willfully violating the automatic stay with their state court filings. (*See* DER Ex. 156 at 7,373–74.) After reviewing Ms. Fraleigh's and Mr. Saba's oppositions to the Order to Show Cause, the court determined sanctions were appropriate. The court imposed a fine of $39,205.49 and dismissed the state court action. (DER Ex. 158 at 7,387–95.)

On August 31, 2016, Trustee filed a Complaint against Appellant and Ms. Fraleigh. (DER Ex. 159 at 7,424–7,942.) In the Complaint, Trustee seeks a judgment for avoidance and recovery of the unauthorized post-petition transfers pursuant to 11 U.S.C. §§ 549, 550, 551. (*Id.*) The Trustee alleges that the interspousal transfer deed was improper because it occurred post-petition without the bankruptcy court's approval or authorization. (*Id.*) In response, Appellant and Ms. Fraleigh filed a motion to dismiss the Complaint for failure to state a claim. (*See Simons v. Slaieh*, Adv. No. 6:16-ap-01224-MH, Dkt. No. 4.) Thereafter, Ms. Fraleigh withdrew her initial motion to dismiss and filed a new motion alleging she was not personally served with the Complaint. (*Id.* at Dkt. Nos. 7, 8.) The bankruptcy court denied both Appellant's and Ms. Fraleigh's motions. (*See id.* at Dkt. Nos. 13, 16.)

On December 16, 2016, Appellant and Ms. Fraleigh filed their first counter complaint against Trustee, alleging: (1) breach of contract; (2) fraud and deceit; (3) extortion; (4) conversion; (5) defamation, slander *per se*; (6) negligence; (7) breach of

3.

fiduciary duties; (8) violation of California Business and Professions Code § 17200; (9) intentional infliction of emotional distress; and, (11) wrongful eviction. (Appellant's Excerpts of Record ("AER") Ex. 1.) Two factual scenarios appear to form the basis of these claims. First, in May and June of 2016, counsel for Appellant and Trustee allegedly engaged in negotiations regarding the sale of the Property. According to Appellant, he offered to purchase the property for $435,000 and Trustee counter-offered to sell the property for $635,000. (AER Ex. 1 at 3.) Appellant contends he agreed to purchase the property for $635,000. (*Id.*) Appellant further argues that Trustee then refused to sell him the Property for that price and demanded Ms. Fraleigh pay an additional $75,000 "to teach her a lesson" for filing the state court action discussed above. (*Id.*; *see also* DER Ex. 164 at 8,051.) The second situation involved the enforcement of the bankruptcy court's Sale Order. After Appellant's unsuccessful appeal of the Sale Order, an eviction notice was posted on the Property. Following the determination of Ms. Fraleigh's state court action, the United States Marshals Service evicted Appellant and his family. According to Appellant, he was given thirty minutes to collect personal property, and about a week later, obtained permission to return and collect additional personal property. (*See* AER Ex. 1 at 7.) When he returned, he realized certain expensive items were missing. However, Appellant acknowledged that many doors and windows were missing prior to his eviction. (*See id.*; *see also* DER Ex. 164 at 8,052–53.)

On January 17, 2017, Trustee moved to dismiss the first counter complaint asserting, among other things, that he and his professionals are entitled to quasi-judicial immunity for the acts alleged. (DER Ex. 159 at 7,396–8,002.) On January 18, 2017, Ms. Fraleigh voluntarily dismissed her counter complaint. (DER Ex. 164 at 8,050.) The court held a hearing on the motion on February 15, 2017. (*Simons v. Slaieh*, Adv. No. 6:16-ap-01224-MH, Dkt. No. 35.) Thereafter, on February 24, 2017, the court dismissed all of Appellant's claims with prejudice, except for the fifth claim

4.

for defamation and slander *per se*, which was dismissed without prejudice. (DER Ex. 164.) The court held that all of Appellant's claims were insufficiently pled, appellant lacked standing to assert certain claims, and that Trustee and his professionals were entitled to quasi-judicial immunity with regard to actions taken in relation to the sale of the Property. (*Id.* at 8,055–63.) The court gave Appellant until March 7, 2017, to file an amended counter complaint. (*See id.* at 8,048–71; Ex. 165 at 8,072–73.) Appellant filed his amended counter claims on March 3, 2017, alleging separate causes of action for slander, defamation, and intentional infliction of emotional distress. (DER Ex. 166 at 8,633–44.) Trustee subsequently filed a motion to dismiss the amended counterclaims, which the court granted on June 19, 2017. (DER Ex. 177.) In that order, the court explained that although Appellant had stated a prima facie claim for slander, the claim was barred by the doctrine of quasi-judicial immunity. (*Id.* at 8,753–55) Appellant's defamation claim was dismissed for lack of standing. As for Appellant's intentional infliction of emotional distress claim, the court noted it had already dismissed that claim with prejudice in the prior order. (*Id.*)

The bankruptcy court's June 19 order forms the basis of the instant appeal; however, Appellant's Opening Brief also challenges the court's dismissal of the causes of action in Appellant's original counter claim. (*See* Dkt. No. 9, Appellant's Opening Brief ("AOB").) The Court will discuss each of the counterclaims in turn.

## II. LEGAL STANDARD

District courts have jurisdiction to hear appeals from, *inter alia*, "final judgments, order, and decrees" of the bankruptcy courts. 28 U.S.C. §158(a)(1); *see also* Fed. R. Bankr. P. 8005. "When reviewing a decision of a bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *In re Guadarrama*, 284 B.R. 463, 468 (C.D. Cal. 2002).

Appellate courts review *de novo* the grant of a Rule 12(b)(6) motion to dismiss.

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005). "When ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The bankruptcy court's conclusions of law regarding the immunity of a trustee are also reviewed de novo, while findings of fact are reviewed for clear error. *In re Jercich*, 238 F.3d 1202, 1205 (9th Cir. 2001).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689–90.

### III. DISCUSSION

#### A. First Claim for Breach of Contract

In his first claim, Appellant alleges that Trustee breached their contract for sale when he refused to sell the Property to Appellant. The elements of breach of contract are (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the Plaintiff. *Oasis v. West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Counsel for

Appellant and Trustee engaged in email correspondence regarding the sale of the Property, and according to Appellant, the emails establish the existence of a contract. (*See* AER Ex. 1 at 3–4.) The Court disagrees. The emails show numerous offers and counteroffers but do not show acceptance by either party. (DER Ex. 159 at 7,970–73.)[1] Thus, Appellant has failed to establish the first element of a breach of contract claim: the existence of a contract.

Further, as the bankruptcy court noted, a bankruptcy trustee generally cannot enter into a valid contract for sale of estate property without court approval. *See* 11 U.S.C. § 363(b)(1); *In re Smith*, 352 B.R. 500, 503 (Bankr. N.D. Ala. 2006) (holding that since sale of debtor's property was not within the ordinary course of business trustee could not enter into an enforceable contract to sell it without court approval). Here, a sale of Appellant's real property would fall outside the ordinary course of business, and would require court approval. It is undisputed that there was no approval of the alleged contract to sell the Property to Appellant. Accordingly, Appellant has not alleged the existence of a contract, and the court **AFFIRMS** the dismissal of his first cause of action.

### B. Second Claim for Fraud and Deceit and Third Claim for Extortion

Appellant's second and third claims stem from certain interactions between Trustee and Ms. Fraleigh. Trustee claims that Appellant lacks standing to assert these claims because the alleged harm was to Ms. Fraleigh, not Appellant. (Dkt. No. 12, Appellee's Answering Brief ("AB") at 14–15.) Standing is the threshold question in every federal case, and a party generally cannot assert the claims of another. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "A federal court's jurisdiction therefore can be invoked only when the plaintiff *himself* has suffered 'some threatened or actual injury

---

[1] The Court considered these exhibits because their authenticity is not disputed, Appellant has alleged the existence of the emails in the amended cross complaint, and the amended cross complaint necessarily relies on the emails to establish the contract. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

resulting from the putatively illegal action.'" *Id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)) (emphasis added).

In his claim for fraud and deceit, Appellant alleges that he and Ms. Fraleigh were injured when Ms. Fraleigh "had to fly to Canada to liquidate whatever amount of money in her bank accounts within which to purchase the Property." (AER Ex. 1 at 5.) Although the factual allegations in the cross complaint refer to actions taken and money spent by Ms. Fraleigh, Appellant argues in his Opening Brief that because the couple was married, he has a legal right to claim the expenditure of her trip to Canada as his own damages. (AOB at 15.)

Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003). A cause of action for fraud "must be pled specifically; general and conclusory allegations do not suffice." *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996). "This particularity requirement necessitates pleading *facts* which show how, when, where, to whom, and by what means the representations were tendered." *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73 (Ct. App. 1990) (emphasis added). Appellant must plead all of the above requirements as to himself, even if he could ultimately claim he suffered damages as a result of Ms. Fraleigh's expenditure of community property. The cross complaint specifically pleads that Ms. Fraleigh detrimentally relied on the alleged fraudulent statements; there is no mention of Appellant's detrimental reliance. (AER Ex. 1 at 4.) Further, it is unclear from the pleadings how the alleged statement that Trustee would sell the Property for $635,000 was false. Indeed, the Court approved the sale of the Property to another buyer for this amount. (*See* DER Ex. 97 at 3,554.) Further, the cross complaint ambiguously states that Trustee "knowingly and intentionally concealed the information" without explaining *what* information was allegedly concealed. This does not satisfy the specificity requirements for pleading fraud. Thus, the Court finds that Appellant's fraud and deceit claim is insufficiently

8.

pled, and **AFFIRMS** its dismissal.

Similarly, Trustee argues that appellant lacks standing to assert this third claim for extortion. The amended cross complaint alleges that Trustee demanded *Ms. Fraleigh* pay an additional $75,000, and as a result, *she* has suffered damages. (AER Ex. 1 at 6–7.) In his Opening Brief, Appellant does not address the bankruptcy court's ruling but merely states that Ms. Fraleigh dismissed her counter claim as a result of alleged harassment and threats by Trustee. (AOB at 15–16.) There is no evidence in the record that Trustee or his professionals harassed or threatened Ms. Fraleigh. Further, even if there was, this does not explain why *Appellant* would be permitted to assert this claim; he does not allege that he personally suffered an injury from Trustee's purported demand that Ms. Fraleigh pay an additional $75,000 for the Property. Accordingly, the Court **AFFIRMS** the dismissal of Appellant's extortion claim.

### C. Fourth Claim for Conversion

In his cross complaint, Appellant states that he returned to his house approximately one week after he was evicted, only to discover that certain expensive items of personal property were missing. (AER Ex. 1 at 7.) Appellant argues that Trustee "failed to 'board up' or replace the missing windows and doors to prevent entry into the Debtor's Property by outsiders." (*Id.*) Accordingly, Appellant contends that Trustee and his professionals intentionally interfered with his personal property, and such interference deprived Appellant of possession and use of the property at issue. (*Id.* at 8.)

The elements of conversion are (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff, and (3) damages. *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003). Trustee argues that Appellant's allegation that Trustee "interfered" with his right to possession is insufficient to state a claim for conversion. Specifically, Trustee states that Appellant does not allege Trustee

9.

*converted* the property to his own use, but merely that he "failed to board up" the house after the eviction, which led to the loss of Appellant's personal property. Further, Trustee claims that there was no wrongful act by Trustee since the eviction was pursuant to the Sale Order.

Plaintiff's allegations are insufficient to state a claim for conversion. Appellant does not allege that Trustee exercised control over the personal property or applied it to his own use. Indeed, the cross complaint alleges that the property was stolen by outsiders, revealing that Trustee did not apply the personal property to his own use. (AER Ex. 1 at 7.) Further, the Sale Order authorized Trustee to evict Appellant and other occupants if still present after June 7, 2016, and authorized the Trustee to move personal property to a moving truck. (DER Ex. 129 at 4,691–92.) Thus, any exercise of control over the Property by way of eviction, or over Appellant's personal property if moved into a moving truck, would not have been wrongful. Regardless, it does not appear that Trustee actually assumed control or ownership over Appellant's personal property, since the option to hire a moving truck was not exercised. Neither does failing to board up the missing windows and doors constitute a "wrongful act" by Trustee. The windows and doors were missing prior to Appellant's eviction, and Appellant advances no support for his contention that Trustee should have improved the Property by making such replacements following the eviction. Accordingly, the Court **AFFIRMS** the dismissal of Appellant's conversion claim.

**D. Appellant's Slander and Defamation Claims**

Appellant asserted a claim for defamation and slander per se as his fifth claim for relief in his original counter claim. (AER Ex. 1 at 8.) This claim was dismissed without prejudice, and Plaintiff's amended counter claim asserted slander and defamation as the first and second claims, respectively. (*See Simons v. Slaieh*, Adv. No. 6:16-ap-01224-MH, Dkt. No. 39.) To prevail in a defamation claim under California law, a plaintiff must allege "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that

causes special damage." *Bowen v. McCaratan, Inc.*, 142 F. Supp. 3d 1007 (E.D. Cal. 2015). "Publication means communication to a third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Arikat v. JP Morgan Chase*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006). Similarly, Slander is a false and unprivileged publication, orally uttered which—as relevant here—charges any person with a crime, or with having been indicted, convicted, or punished for a crime. *See* Cal. Civ. Code § 46 (1945).

The bankruptcy court originally dismissed Appellant's defamation and slander claim because he failed to plead publication. (DER Ex. 164 at 8,058.) Although Appellant's amended counter claim cured the pleading defect as to the slander claim, the court found that Trustee was entitled to quasi-judicial immunity for this claim. (DER Ex. 177 at 8,752–54.) The court also held that Appellant did not have standing to assert his second defamation claim, which appeared to be based on slander of Ms. Fraleigh. (*Id.* at 8,752.)

"Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to a court order." *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009). "Additionally, court appointed officers who represent the estate are the functional equivalent of a trustee." *Id.* For quasi-judicial immunity to apply, the defendants must show: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and, (4) the bankruptcy court approved their acts. *Id.*; *see also In re Jacksen*, 105 B.R. 542, 545 (B.A.P. 9th Cir. 1989) (holding a trustee has immunity for actions "within the scope of the authority conferred upon him by statute or the court").

Trustee asserts immunity under the theory that bankruptcy trustees are entitled to quasi-judicial immunity for actions that are integrally related to the adjudication of the bankruptcy case. *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986) ("[A] trustee in bankruptcy . . . is entitled to derived judicial immunity

11.

because he is performing an integral part of the judicial process."). Appellant argues that the Supreme Court's decision in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), redirects our inquiry away from whether actions performed by nonjudicial officers are integrally related to the judicial process to an examination of the nature of those functions. Appellant contends that the trustee is only immune for actions that are functionally comparable to those of judges, i.e., those functions that involve discretionary judgment. *Antoine*, 508 U.S. at 436. Appellant concedes that a bankruptcy trustee would enjoy absolute quasi-judicial immunity for judicial functions involving the exercise of discretionary judgment, but argues that the acts performed here were extraneous to and not "in any way related to the judicial process." (AOB at 35.) Trustee, as the proponent of the claim of immunity, bears the burden of establishing that such immunity is justified. *Antoine*, 508 U.S. at 432.

All four elements required to establish quasi-judicial immunity are satisfied here. First, as the bankruptcy court noted, all of Trustee's actions related to the sale of the Property and Appellant's eviction were within the scope of Trustee's duties. One of Trustee's primary duties under 11 U.S.C. § 704(a)(1), is to "collect and reduce to money the property of the estate for which the trustee serves." Accordingly, Trustee's attempt to sell the Property pursuant to the Sale Order was within the scope of his statutorily conferred authority as trustee. Additionally, the Sale Order authorized Appellant's eviction, and therefore, any acts by Trustee in an attempt to evict Appellant would also be within the scope of his authority. The allegedly defamatory statements were made by Trustee and his professionals in their effort to evict Appellant and effectuate the Sale Order. Inquiry regarding missing Estate property— the windows and doors—was proper given Trustee's duty to be accountable for all property received. *See* 11 U.S.C. § 704; *see also In re Cedar Funding, Inc.*, 419 B.R. 807, 822 (B.A.P. 9th Cir. 2009) (holding that trustee was immune from claim for slander where allegedly defamatory statements were made while performing his official statutory duties). As the bankruptcy court stated, "[h]ere, the allegedly

defamatory statements were made in direct response to the disappearance of estate property, the sale of which had been authorized pursuant to Court order, and the disappearance of which was the sole responsibility of the Trustee to investigate." (DER Ex. 177 at 8,754.) Thus, the first element is satisfied.

Second, Appellant clearly had notice of Sale Order and pending eviction. Appellant opposed and attempted to appeal the Sale Oder, and was given notice of the eviction via the Sale Order and the eviction notice posted on the property. To the third and fourth elements, Trustee candidly disclosed to the bankruptcy court its proposed actions and the court approved and issued the Sale Order. Therefore, all four elements are satisfied. Accordingly, because the Court finds that all four requirements are met, and that the statements at issue were made during Trustee's attempt to prosecute the Sale Order—an act "essential to the authoritative adjudication of private rights to the bankruptcy estate"—it **AFFIRMS** the dismissal of Appellant's defamation and slander claims on quasi-judicial immunity grounds. *See In re Castillo*, 297 F.3d 940, 951 (9th Cir. 2002).

### E. Appellant's Sixth Claim for Negligence

With this claim, Appellant argues that Trustee's failure to board up the missing windows and doors constituted negligence. (AER Ex. 1 at 9.) In California, the elements of negligence are (1) a legal duty to use due care, (2) breach of that duty, and (3) the breach as the proximate or legal cause of the resulting injury. *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996.) The bankruptcy court dismissed this claim on the grounds that Appellant cited no authority for his proposition that Trustee owed him a duty to replace windows and doors following the eviction, and because the only damages alleged are to Ms. Fraleigh. (DER Ex. 164 at 8,059; *see also* AER Ex. 1 at 10)

First, Trustee argues that his duties under 11 U.S.C. §§ 323(a) and 704 are to the Estate, not to Appellant. (AB at 24.) On the other hand, Appellant contends that because Trustee was the owner of the real Property, he had a duty to protect the

13.

personal property left inside the home. (AOB at 23.) Appellant also asserts that Trustee had a duty to be accountable for all property *received*, and as a beneficiary of the Estate, Appellant was owed this duty. (*Id.*)

First, the Court notes that the only damages alleged in the counter complaint are Ms. Fraleigh's damages. As explained above, Appellant lacks standing to assert Ms. Fraleigh's claims. But, even assuming Appellant's allegations can be construed as pleading his own damages, Appellant has failed to show that Trustee owed him a duty to "board up" the Property. A trustee is charged primarily with conserving estate assets and maximizing distributions to creditors. *See In re Rigden*, 795 F.2d 727, 730 (9th Cir. 1986.) "When a debtor retains an interest in estate assets—either by properly claiming exemptions or because surplus property will remain in the estate after all creditors have been compensated—the trustee owes a fiduciary duty to the debtor as well." *Wisdom v. Gugino*, 649 Fed. App'x 583, 584 (9th Cir. 2016) (citing U.S. Dep't of Justice, Executive Office for the United States Trustees, *Handbook for Chapter 7 Trustees* 4–2 (2012)). First, the personal property Appellant complains was stolen was not part of the Estate. Thus, Trustee never assumed control over, or "received" this property as part of the Estate. Contrary to Appellant's contention, the Sale Order does not state that Trustee *should* rent a U-Haul to remove personal property; as noted above, the order merely authorized Trustee to do so in order to effectuate the eviction. (DER Ex. 129 at 4,691–92.) Accordingly, even if Trustee owed Appellant a fiduciary duty in this case, it was as to his interest in surplus *estate* property, not as to personal property abandoned following eviction. Therefore, the Court **AFFIRMS** the dismissal of Appellant's negligence claim.

**F. Appellant's Seventh Claim for Breach of Fiduciary Duty**

A claim for breach of fiduciary duty requires the following elements be shown: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damages. *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (Ct. App. 2011). As noted above, bankruptcy trustees do owe fiduciary duties to the estate and creditors, and in some

14.

situations, to the debtor. *See also In re Stoll*, 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000). Here, Appellant asserts that Trustee and his professionals breached their fiduciary duties "by doing all of the acts and omissions herein alleged." (AOB at 10.)

First, to the extent Appellant is attempting to assert this claim on behalf of Ms. Fraleigh and the estate, the claim fails for lack of standing. *See In re Stoll*, 252 B.R. at 495 ("Only a trustee may pursue a cause of action belonging to the bankruptcy estate.") Thus, to plead breach of fiduciary duty, Appellant must first assert facts sufficient to show *he* was owed a duty by Trustee. Appellant has failed to do so. Appellant has not pleaded that he retained an interest in estate assets or that there would be surplus property after all creditor's claims were satisfied. Further, section 704 does not contain the extensive duties Appellant claims are owed to him and Ms. Fraleigh. (*See* AER Ex. 1 at 10 (stating that trustee "owed cross-claimants a fiduciary duty to act at all times in good faith and in [their] best interest" and had a duty "to act in Ms. Fraleigh's highest best interests at all times").) Even assuming the general allegations in the amended cross complaint are sufficient to establish the existence of a fiduciary duty, Appellant has not properly pleaded breach. The unclear statement that Trustee breached his duty by committing all acts alleged in the cross complaint is insufficient given that none of Appellant's other claims are sufficiently pled. Moreover, Appellant has not explained how any of these alleged acts would result in a breach of the fiduciary duties owed specifically to him as a debtor, and not to the estate generally. Accordingly, the Court **AFFIRMS** the dismissal of Appellant's breach of fiduciary duty claim.

### G. Appellant's Eighth Claim for Violation of California Business and Professions Code Section 17200

California Business and Professions Code section 17200 states:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair deceptive, untrue or misleading advertising and any at prohibited by Chapter 1

(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

In his amended cross complaint, Appellant again contends that the "acts alleged herein" including "(a) Breach of Contract, (b) Extortion; (c) Conversion; (d) breach of fiduciary duties, (e) Breach of B & P Code section 17200, et seq.; and (f) Negligence" form the basis of this claim. (AER Ex. 1 at 12.)

The bankruptcy court found this claim "redundant in that [Appellant] argues that the other causes of action form the basis for this cause of action." (DER Ex. 164 at 8,061.) The court also noted that the causes of action relied upon lacked merit or were barred by Trustee's quasi-judicial immunity, and the actions allegedly committed by Trustee "are not plausibly considered a 'business act or practice' within the meaning of the statute." (*Id.*) In his Opening Brief, Appellant again asserts that the above-listed claims form the basis of this claim.

In *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999), the court warned that that the breadth of § 17200 does not give a plaintiff license to "plead around" the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition. This is what Appellant has attempted to do with his section 17200 claim. Since all of his other claims against Trustee cannot proceed due to substantial pleading, standing, or immunity issues, the same allegations cannot form the basis of an unfair competition claim.

Further, "a common law violation such as breach of contract is insufficient" on its own to support a claim under the unlawful prong of section 17200. *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Thus, the allegations advanced by Appellant that are based on common law violations are insufficient to support a finding of unlawfulness, and the only statutory causes of action alleged are extortion and defamation. As analyzed above, these claims fail for lack of standing or because of Trustee's quasi-judicial immunity. Accordingly, Appellant cannot attempt

16.

to recast those insufficient allegations as a claim under section 17200.

Lastly, the amended cross complaint lacks allegations to support the conclusion that the alleged conduct was unfair or fraudulent. California Courts of Appeal are split as to the test for what constitutes an unfair business practice. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247 (Ct. App. 2010) (internal citations omitted) (describing three tests courts use when analyzing the unfair prong in actions involving consumers). In his amended cross complaint, Appellant states that Trustee engaged in deceptive practices with respect to the administration of the Estate and conspired to defraud Appellant. (AER Ex. 1 at 12.) However, Appellant does not assert any specific allegations with respect to how Trustee's administration of the Estate was unlawful, unfair, or fraudulent. Trustee's act of marketing the property for sale and evicting Appellant was done pursuant to the Sale Order and was not unlawful or unfair. As to whether the acts were fraudulent, Appellant essentially relies on the allegations in his other claims. *See Grant v. Pensco Tr. Co.*, No. 12-cv-06084-WHO, 2014 WL 1471054, at *6 (N.D. Cal. Apr. 15, 2014) (granting motion to dismiss UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992) (noting that fraudulent conduct "requires a showing [that] members of the public 'are likely to be deceived'"). These allegations are insufficient to state a claim under section 17200.

Accordingly, the Court **AFFIRMS** the dismissal of Appellant's section 17200 claim.

**H. Appellant's Ninth Claim for Intentional Infliction of Emotional Distress**

A cause of action for intentional infliction of emotional distress ("IIED") exists where there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress, (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's

17.

outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Appellant asserts that Trustee's alleged fraud, extortion and defamation was extreme and outrageous, done intentionally, and caused him and his family to suffer severe emotional distress. (AER Ex. 1 at 14–15; AOB at 32.) Specifically, Appellant alleges that Trustee should have known that refusing to comply with the alleged purchase agreement would likely cause severe emotional distress. (AER Ex. 1 at 15.) Trustee argues Appellant lacks standing to assert this claim because the allegations concern Ms. Fraleigh's alleged distress. (AB at 29.)

Under California law, an action must be intentional or reckless to serve as the basis for an intentional infliction of emotional distress claim. It is not enough to simply allege inaction on the part of the defendant. *See Spackman v. Good*, 245 Cal. App. 2d 518, 530 (1966). Since Appellant's claims for conversion, breach of fiduciary duty, and negligence are all based on the alleged failure to board up the Property, the allegations supporting these causes of action cannot serve as the basis for his IIED claim. Appellant has failed to allege facts to show that any of the other alleged wrongs, i.e., breach of contract, slander, or extortion, were done in order to cause, or with reckless disregard for the possibility of causing, severe emotional distress. Indeed, the alleged defamatory statements were geared at discovering information relating to missing Estate property. As to the alleged act of extortion, Appellant has failed to provide facts that show Trustee extorted Ms. Fraleigh with the intent of causing *Appellant* severe emotional distress; indeed, it is not clear that Appellant was even present when the alleged demand was made. Lastly, there are no facts relating to the alleged breach of contract that show that it was done to cause severe emotional distress or with reckless disregard thereto.

Further, for conduct to be outrageous, it must be "so extreme as to exceed all bounds of that usually tolerated in a civil society." *King v. AC & R Advertising*, 65 F.3d 764, 769 (9th Cir. 1995). Basically, Appellant contends that it was outrageous of Trustee to engage in the other alleged wrongs. However, Appellant's allegations are

18.

insufficient in that they do not state what specific acts were outrageous under this standard. Accordingly, the Court **AFFIRMS** the dismissal of Appellant's IIED claim.

### I. Appellant's Tenth Claim for Wrongful Eviction

Lastly, Appellant argues that he was wrongfully evicted because Trustee did not follow state eviction laws. (AER Ex. 1 at 16.) However, as the bankruptcy court noted, state eviction laws to not apply after a bankruptcy court enters an order directing surrender of the property. *See George v. Cnty. of San Luis Obispo*, 78 Cal. App. 4th 1048 (Ct. App. 2000) ("State unlawful detainer law does not apply, and the state must defer to the federal order of the bankruptcy court directing immediate surrender of the premises.") Accordingly, this claim was properly dismissed.

Appellant also alleged that the order to sell the Property was based on fraud and misrepresentation by Trustee. However, Appellant provides no factual allegations with respect to what conduct Trustee engaged in procuring the Sale Order. Moreover, Appellant was unsuccessful in his attempt to appeal the Sale Order, and cannot use these bare allegations in an effort to collaterally attack that outcome. Lastly, based on the above analysis of Trustee's quasi-judicial immunity, Trustee is immune from this claim as the eviction was within the scope of Trustee's duties, was disclosed to Appellant and the court, and approved by the court. *See infra* Section III.E. Thus, the Court **AFFIRMS** the dismissal of Appellant's wrongful eviction claim.

### J. Dismissal With Prejudice

Lastly, the Court finds dismissal with prejudice was appropriate. Leave to amend may be denied where there has been a repeated failure to cure the deficiencies by amendment previously allowed, or where amendment would be futile. *See Forman v. Davis*, 371 U.S. 178, 182 (1962). Here, it would have been futile to allow Appellant leave to amend claims for which he lacked standing, and from which Trustee is immune. Thus, Appellants extortion, defamation, and wrongful eviction claims were properly dismissed without leave to amend. As to the remaining claims, Appellant had multiple opportunities to present these claims, and he continually failed

to state a prima facie case. (*See* DER Ex. 164 at 8,064.) For these reasons, dismissal with prejudice was appropriate.

**IV. CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's order dismissing with prejudice Appellant's counter claims.

**IT IS SO ORDERED.**

Dated: January 16, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

CC: Bankruptcy Court and BAP